## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT CRESPO, individually and on behalf of all others similarly situated, | Civil Action No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| S.C. JOHNSON & SON, INC., | |
| Defendant. | |

Plaintiff Robert Crespo ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendant S.C. Johnson & Son, Inc. ("S.C. Johnson" or "Defendant").

### NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of Raid Concentrated Deep Reach Fogger ("Raid") in the United States.

2. Defendant represents that Raid "kills ants, roaches, & spiders," "penetrates into cracks & crevices to kill bugs where they live & breed," and "keeps killing for up to 2 months" as shown in the image below:



3.     Unfortunately for consumers however, Raid is a complete sham.  As explained below, Raid is ineffective for pest control because it cannot reach into hiding spots where pests dwell and because the pests it targets are resistant to cypermethrin, the product's active ingredient.  The product is ineffective and worthless.

4.     The draw to consumers for using insect foggers, such as Raid (also sometimes referred to as "bug bombs"), is easily understood.  Many consumers are desperate to alleviate pest problems in their homes, but do not wish to incur the expense of hiring a pest control professional.  So they purchase Raid in the hopes of an easy fix.  As the New York Times has noted, "in the battle against bugs, it is often low-income neighborhoods that suffer the most.  After all, when the choice comes down to a $175 visit from an exterminator of a $3 fogger, the fogger will most often win out."[1]

---

[1] Marc Santora, *Explosion in Apartment Highlights Risks of Using Chemical Foggers to Kill Insects*, NY Times, July 12, 2013, *available at* https://www.nytimes.com/2013/07/13/nyregion/a-risky-weapon-in-the-fight-against-insects.html.

5.      It is therefore unsurprising that insect foggers, such as Raid, are so popular.  The U.S. Environmental Protection Agency ("EPA") has estimated that approximately 50 million foggers are used annually.[2]

6.      Unfortunately for consumers, these foggers are too good to be true.  As Dr. Michael Potter, an entomology professor at the University of Kentucky, has explained, "[w]hile foggers require little effort to use, they seldom resolve, and can exacerbate, indoor pest problems."[3]  As explained below, this is true for two reasons.

7.      First, when foggers are activated, "[t]he entire contents are released upwards, into the airspace, where the aerosol droplets remain suspended for a period of time and then gradually settle onto floors, counter tops and other surfaces."  However, "[w]hen applied in this manner, very little insecticide actually penetrates into cracks, voids, and other secluded locations where cockroaches, ants, bed bugs, and most other household pests congregate and spend most of their time."[4]

8.      This is a big problem because, as Defendant's own product packaging acknowledges, the "cracks and crevices" is where the insects "live and breed."  Simply put, the product cannot be effective if it cannot reach the pests.

9.      Second, the active ingredient in Raid, cypermethrin, is a form of pyrethrin, which is theoretically supposed to act as an insecticide.  However, pyrethrins "are seldom lethal to roaches, ants, … spiders … and other crawling pets."[5]  That is because these insects quickly build up a resistance to this chemical.  As an article in the Journal of Pesticide Reform noted:

---

[2] Susan C. Jones, *Ineffectiveness of Over-the-Counter Total-Release Foggers Against the Bed Bug (Heteroptera: Cimicidae)*, 105 J. of Econ. Entomology 3 at pp. 957-963 (June 2012), *available at* https://academic.oup.com/jee/article/105/3/957/913369.

[3] Michael F. Potter, *Limitations of Home Insect Foggers ("Bug Bombs")*, College of Agriculture Food and Environ. at University of Kentucky, *available at* https://entomology.ca.uky.edu/ef643.

[4] *Id.*

[5] *Id.*

"Resistance to cypermethrin has developed quickly in insects exposed frequently. Both agricultural and household pest species have developed resistance. The degree of resistance is usually measured with a resistance ratio, the ratio between the amount of a pesticide required to kill a resistant insect and the amount required to kill average (non-resistant) insects. … Among household pests, resistance ratios have ranged from 5 to 100. (The resistance ratio of 5 was enough to render synthetic pyrethroids ineffective.)."[6]

10.     Upon information and belief, Defendant has sold millions of units of Raid through its false promises of effectiveness to consumers

11.     Plaintiff is a purchaser of Raid who asserts claims on behalf of himself and similarly situated purchasers of Raid for violations of the consumer protection laws of New York, unjust enrichment, breach of express warranty and fraud.

## PARTIES

12.     Plaintiff Robert Crespo is a citizen of New York who resides in Brooklyn, New York. Mr. Crespo purchased Raid from a Lowe's store located in Brooklyn, New York, in November 2016 for approximately $8. Prior to purchase, Mr. Crespo carefully read the Raid labeling, including the representations that it "kills ants, roaches, & spiders," "penetrates into cracks & crevices to kill bugs where they live & breed," and "keeps killing for up to 2 months." Mr. Crespo believed these statements to mean that Raid would kill ants, roaches, and spiders, and that it would effectively control and prevent these insects from home infestations. Mr. Crespo relied on these representations in that he would not have purchased Raid at all, or would have only been willing to pay a substantially reduced price for Raid, had he known that these

---

[6] Caroline Cox, *Cypermethrin*, 16 J. of Pesticide Reform 2 (Summer 1996), *available at* https://d3n8a8pro7vhmx.cloudfront.net/ncap/pages/26/attachments/original/1428423343/cyperm ethrin.pdf?1428423343.

4

representations were false and misleading.  Plaintiff Crespo used the product as directed, but it did not provide effective insect control, as advertised.

13.     Defendant S.C. Johnson & Son is a Wisconsin corporation with its principal place of business in Racine, Wisconsin.  Defendant distributes Raid throughout the United States.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

15.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this District.

16.     All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendant.

## CLASS REPRESENTATION ALLEGATIONS

17.     Mr. Crespo seeks to represent a class defined as all persons in the United States who purchased Raid (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

18.     Mr. Crespo also seeks to represent a subclass defined as all Class members who purchased Raid in New York (the "New York Subclass").

19.     Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and New York Subclass number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class

members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

20.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing and promotion of Raid is false and misleading.

21.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased Raid, and suffered a loss as a result of that purchase.

22.     Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

23.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

24.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

25.     Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

26.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of Raid.

27.     The foregoing deceptive acts and practices were directed at consumers.

28.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability of Raid to prevent, control, and kill ants, spiders, and roaches, and to penetrate into cracks and crevices where these pests live and breed.

29.     Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased Raid if they had known that Raid was ineffective for its stated purposes, and (b) they overpaid for Raid on account of its misrepresentations that it "kills ants, roaches, & spiders," "penetrates into cracks & crevices to kill bugs where they live & breed," and "keeps killing for up to 2 months."

30.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II

### False Advertising, New York Gen. Bus. Law § 350

31.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

32.     Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

33.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law because it fundamentally misrepresents the ability of Raid to prevent, control, and kill ants, spiders, and roaches, and to penetrate into cracks and crevices where these pests live and breed.

34.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

35.     These misrepresentations have resulted in consumer injury or harm to the public interest.

36.     As a result of these misrepresentations, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased Raid if they had known that Raid was ineffective for its stated purposes, and (b) they overpaid for Raid on account of its misrepresentations that it "kills ants, roaches, & spiders," "penetrates into cracks & crevices to kill bugs where they live & breed," and "keeps killing for up to 2 months."

37.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III

### Unjust Enrichment

38.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

39.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

40.     Plaintiff and Class members conferred benefits on Defendant by purchasing Raid.

41.     Defendant has knowledge of such benefits.

42.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of Raid.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that Raid "kills ants, roaches, & spiders," "penetrates into cracks & crevices to kill bugs where they live & breed," and "keeps killing for up to 2 months."

43.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT IV

### Breach of Express Warranty

44.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

45.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

46.     In connection with the sale of Raid, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that Raid "kills ants,

roaches, & spiders," "penetrates into cracks & crevices to kill bugs where they live & breed,"
and "keeps killing for up to 2 months"

47.     In fact, Raid does not conform to the above-referenced representations because
Raid is ineffective for its stated purposes.

48.     Plaintiff and Class members were injured as a direct and proximate result of
Defendant's breach because (a) they would not have purchased Raid if they had known that Raid
was ineffective for its stated purposes, and (b) they overpaid for Raid on account of its
misrepresentations that it "kills ants, roaches, & spiders," "penetrates into cracks & crevices to
kill bugs where they live & breed," and "keeps killing for up to 2 months."

## COUNT V
### Fraud

49.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation
set forth above as though fully set forth herein.

50.     Plaintiff brings this claim individually and on behalf of the members of the
proposed Class and New York Subclass against Defendant.

51.     As discussed above, Defendant misrepresented on Raid's labeling that it "kills
ants, roaches, & spiders," "penetrates into cracks & crevices to kill bugs where they live &
breed," and "keeps killing for up to 2 months."

52.     The false and misleading representations and omissions were made with
knowledge of their falsehood.  Defendant is a top distributor of pest control products in the
United States who is undoubtedly aware of the studies finding that its product does not work.
Nonetheless, Defendant continues to sell its ineffective and worthless Raid to unsuspecting
consumers.

53.     The false and misleading representations and omissions were made by Defendant,
upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and

justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and New York Subclass to purchase Raid.

54.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VI
### Magnuson-Moss Warranty Act

55.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

56.     Plaintiff brings this case individually and on behalf of the members of the proposed Class against Defendant.

57.     Raid is a consumer product as defined in 15 U.S.C. § 2301(1).

58.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

59.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

60.     In connection with the sale of Raid, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that it "kills ants, roaches, & spiders," "penetrates into cracks & crevices to kill bugs where they live & breed," and "keeps killing for up to 2 months."

61.     In fact, Raid is ineffective to prevent, control, and kill these insects.

62.     By reason of Defendant's breach of warranty, Defendant violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiff and Class members.

63.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased Raid if they had known that

Raid was ineffective for its stated purposes, and (b) they overpaid for Raid on account of its misrepresentations that it "kills ants, roaches, & spiders," "penetrates into cracks & crevices to kill bugs where they live & breed," and "keeps killing for up to 2 months."

## **RELIEF DEMANDED**

64.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.     For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

b.     For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

d.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

h.     For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  December 3, 2018                    Respectfully submitted,

                                                                **BURSOR & FISHER, P.A.**

                                                                By:  /s/ *Yitzchak Kopel*

Yitzchak Kopel

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  scott@bursor.com
         ykopel@bursor.com
         aleslie@bursor.com

*Attorneys for Plaintiff*