UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Robert Crespo, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>— against —<br><br>S.C. Johnson & Son, Inc.<br><br>           Defendant. | 18-cv-06869 (ARR) (RML)<br><br><br><br><br>Opinion & Order |

ROSS, United States District Judge:

Robert Crespo ("plaintiff") filed this putative class action on behalf of United States purchasers of Raid Concentrated Deep Reach Fogger ("Raid" or "the Product"), a public-health pesticide sold by S.C. Johnson & Son, Inc. ("defendant"). Raid's label makes several claims about the Product's efficacy, the manner in which it operates, and the pests it targets. Despite these representations, plaintiff alleges that the Product is entirely ineffective and that the statements contained on the label are misleading and inaccurate. He asserts claims for breach of express warranty and violations of the Magnuson-Moss Warranty Act and the New York General Business Law.[1]

Defendant has moved to dismiss plaintiff's complaint, arguing that plaintiff's claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136–136y. In the alternative, defendant argues that plaintiff fails to state a claim upon which relief can be granted. Defendant's motion requires the court to consider the scope of express and conflict

---

[1] Plaintiff's complaint also asserts claims for fraud and unjust enrichment, but he explains in his opposition brief that he "will no longer pursue" those claims. Pl.'s Opp'n 1 n.1, ECF No. 17. As such, the court does not evaluate these claims, and they are dismissed without prejudice. *Cf. id.*

preemption under FIFRA, the nature of the pesticide registration and review process mandated by FIFRA and its interpreting regulations, and whether the Supreme Court's holding in *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), applies equally to public-health and agricultural pesticides. For the following reasons, the court concludes that plaintiff's claims are not preempted and that plaintiff's complaint meets the pleading standards of Federal Rule of Civil Procedure 12(b)(6). Accordingly, the defendant's motion is denied.

## BACKGROUND

S.C. Johnson & Son, Inc., manufactures and distributes Raid, an insect fogger, throughout the United States. *See* Compl. ¶¶ 4, 10, 13, ECF No. 1. Raid's label claims that the Product "'kills ants, roaches, & spiders,' 'penetrates into cracks & crevices to kill bugs where they live & breed,' and 'keeps killing for up to 2 months.'" *Id.* ¶ 2.[2] As an insect fogger, otherwise known as a "bug bomb," Raid releases its contents into the air after a user activates the Product. *Id.* ¶¶ 4, 7. Plaintiff alleges that the Product cannot reach pests that hide in "cracks and crevices" because the insecticide "gradually settle[s] onto floors, counter tops and other surfaces" after it is activated. *Id.* ¶¶ 7–8. Plaintiff also alleges that cypermethrin, Raid's active ingredient, fails to effectively exterminate pests, because insects—including the ants, roaches, and spiders that Raid purports to target—"quickly build up a resistance to [the] chemical." *Id.* ¶ 9.

In November 2016, plaintiff purchased Raid from a Lowe's store in Brooklyn, New York. *Id.* ¶ 12. Before deciding to buy the Product, plaintiff "carefully read the Raid labeling." *Id.* Relying on the representations contained on the label, he "believed . . . that Raid would kill ants, roaches, and spiders, and that it would effectively control and prevent these insects from home

---

[2] Plaintiff's complaint uses an ampersand when quoting the statements contained on Raid's label. *See, e.g.*, Compl. ¶ 2. However, the image included in plaintiff's complaint reveals that the label uses the term "and" instead of an ampersand. *See* Compl. at 2. Throughout this opinion and order, I use the ampersand symbol to match the allegations in plaintiff's complaint. *See also* Def.'s Br. 3 & n.2, ECF No. 15.

infestations." *Id.* Though he followed the instructions on the label, the Product "did not provide effective insect control." *Id.* If plaintiff had known that the Product did not work as defendant claimed, he would not have purchased Raid or, alternatively, he "would have only been willing to pay a substantially reduced price" for the Product. *Id.*

## I.     Pesticide Registration Process

Before selling or distributing a pesticide in the United States, a pesticide manufacturer must register its product with the Environmental Protection Agency ("EPA"). *See* § 136a(a), (c). As part of the registration process, an applicant must file a statement with the EPA that includes several pieces of information, including "a complete copy of the labeling of the pesticide, a statement of all claims to be made for it, and any directions for its use" and "a full description of the tests made and the results thereof upon which the [label's] claims are based." § 136a(c)(1)(C), (F). FIFRA defines "label" as "the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers." § 136(p)(1). FIFRA's regulations mandate the disclosure of certain information on the pesticide's label, including the pests targeted by the product, the "method of application," and the "frequency and timing of applications necessary to obtain effective results without causing unreasonable adverse effects on the environment." 40 C.F.R. § 156.10(a)(1)(viii), (i)(2)(iii)–(vi).

Though all pesticide manufacturers must conduct studies to support the efficacy-related claims made on their products' labels, the statute authorizes the EPA to use its discretion to "waive data requirements pertaining to efficacy." § 136a(c)(5); *see also* Office of Pesticide Programs, Envtl. Protection Agency, *Label Review Manual* 4-8 [hereinafter *Manual*], https://www.epa.gov/sites/production/files/2018-04/documents/lrm-complete-mar-2018.pdf (last

updated March 2018).[3] Pursuant to this authority, the EPA has waived the required submission of efficacy data for most products. *See Manual*, *supra*, at 4-8. There are, however, several categories of pesticides for which the EPA continues to require the submission of efficacy data before a product can be registered. *Id.* at 4-8 to 4-9. Relevant to this motion, manufacturers of invertebrate-control pesticides—defined as "[p]roducts intended for use . . . in premises or in the environment to control pests of sanitary or public health significance such as . . . poisonous spiders, fire ants [and] cockroaches," *id.* at 4-8—are obligated to submit data to the EPA that demonstrates that the product "warrant[s] the [manufacturer's] proposed claims for it," § 136a(c)(1)(F), (5)(A). The EPA reviews the data submitted by the applicant and, on that basis, determines whether the efficacy claims made on the label are adequately supported. *See* § 136a(c)(5)(A); 40 C.F.R. § 152.112(d) ("EPA will approve an application . . . only if . . . [t]he Agency has determined that the composition of the product is such as to warrant the proposed efficacy claims for it . . . ."), § 158.70(a).

Before a product may be registered, the EPA must receive and approve a pesticide's "final printed labeling." § 156.10(a)(6)(i). The EPA will register a pesticide after it determines, *inter alia*, that the applicant's claims about the product are accurate and the product's labeling complies with the requirements of the statute. § 136a(c)(5)(A)–(B). "[R]egistration of a pesticide shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions

---

[3] The court takes judicial notice of the EPA website and the documents maintained on that site, including records pertaining to Raid's registration process. *Cf. Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (taking judicial notice of "documents filed with governmental entities and available on their official websites"). Though a court considering a Rule 12(b)(6) motion ordinarily may not look outside the pleadings, the court "may take judicial notice of certain matters of public record without converting the motion into one for summary judgment." *Id.* Facts contained within public records are admissible as long as they are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). Plaintiff does not dispute the admissibility of documents related to Raid's registration and provides no reason why the accuracy of these records should be questioned. *See also Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 460 n.1 (S.D.N.Y. 2019).

of [FIFRA]." *Id.* § 136a(f)(2). However, "[i]n no event shall registration of an article be construed as a defense for the commission of any offense under [FIFRA]." *Id.* More specifically, it is a violation of FIFRA for a pesticide to be "misbranded." § 136j(a)(1)(E); *see also* 40 C.F.R. §§ 152.112(f), 156.10(a)(5). A pesticide is "misbranded" if its label contains any representation or claim "which is false or misleading in any particular." § 136(q)(1)(A). "Because it is unlawful under the statute to sell a pesticide that is registered but nevertheless misbranded, manufacturers have a continuing obligation to adhere to FIFRA's labeling requirements." *Bates*, 544 U.S. at 438.

After registration, a manufacturer may not make any claims or representations about a pesticide that "substantially differ from any claims made for it as part of the statement required in connection with its registration." § 136j(a)(1)(B). If a registrant wishes to change a pesticide's labeling, it must apply for a registration amendment, which the EPA will approve only if it "determines that the change will not violate any provision of [FIFRA]." § 136a(f)(1).

## II.    Raid's Registration Process

Raid is registered with the EPA under the registration number 4822-452. Arden Decl. Ex. B, at 1, ECF No. 16-2. On May 1, 1997, the EPA accepted the Product's registration on the condition that the defendant make certain changes to the label—none of which are relevant to the claims asserted here. *Id.* at 1–2. In conditionally registering Raid, the EPA approved a list of proposed claims about the Product, including the claims challenged by plaintiff in this lawsuit. *Id.* at 3. More recently, on August 21, 2013, defendant received approval from the EPA to make certain revisions to the label, but these revisions did not alter the approved efficacy claims challenged here. *See* Arden Decl. Ex. C, at 9, ECF No. 16-3; *see also* Def.'s Br. 6, ECF No. 15.

Plaintiff filed the instant complaint on December 3, 2018. *See* Compl. Plaintiff seeks to represent a class of all United States purchasers of Raid and a subclass of those who purchased

Raid in New York. *Id.* ¶¶ 17–18.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Though a plaintiff need not include "detailed factual allegations" in the complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must construe a complaint liberally, "accepting all factual allegations . . . as true, and drawing all reasonable inferences in the plaintiff's favor." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

**DISCUSSION**

## I.     Preemption

Defendant moves to dismiss plaintiff's complaint on the grounds that his claims are preempted by FIFRA. *See* Def.'s Br. 6–16. I begin by explaining the standard for preemption under FIFRA before analyzing the effect of FIFRA's preemption clause on each of plaintiff's claims.

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Under that clause, state laws that "interfere with, or are contrary to the

laws of Congress, made in pursuance of the constitution" are invalid. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824). Still, "because the States are independent sovereigns in our federal system," there is a presumption that "Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *see also Arizona v. United States*, 567 U.S. 387, 400 (2012) ("[C]ourts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress." (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947))). In particular, there is a presumption against preemption in areas where states have traditionally exercised significant regulatory authority; the regulation of "poisonous substances, like pesticides," is one such area. *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 887 (8th Cir. 2005) (citing *Bates*, 544 U.S. at 449).

There are three types of preemption: express, conflict, and field. *See N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (citing *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005)). Defendant argues that plaintiff's labeling claims are foreclosed by both express and conflict preemption.

## A. Express Preemption

Express preemption occurs when "Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision." *Arizona*, 567 U.S. at 399. FIFRA contains an express preemption provision that sets forth certain limitations on the state regulation of pesticides. Pursuant to 7 U.S.C. § 136v(a), "[a] State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by [FIFRA]." However, "[s]uch State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." § 136v(b). This preemption clause is relatively "narrow." *Bates*,

544 U.S. at 452. While it "pre-empts competing state labeling standards" and other rules that would impose labeling requirements that differ from "those set out in FIFRA and its implementing regulations," "[i]t does not . . . pre-empt any state rules that are fully consistent with federal requirements." *Id.*; *see also id.* at 442 ("The imposition of state sanctions for violating state rules that merely duplicate federal requirements is . . . consistent with the text of § 136v.").

In *Bates v. Dow Agrosciences LLC*, the Supreme Court considered the impact of FIFRA's express preemption clause on a variety of state-law claims challenging the safety and efficacy of an agricultural pesticide. *Id.* at 434, 442–43 & n.15. The Court explained that FIFRA's express preemption clause left states with "ample authority to review pesticide labels to ensure that they comply with both federal and state labeling requirements." *Id.* at 442. As such, a state-law obligation—whether it takes the form of a statute, regulation, or common-law duty—is preempted only if it satisfies "two conditions." *Id.* at 444.

> First, it must be a requirement "*for labeling or packaging*"; rules governing the design of a product, for example, are not pre-empted. Second, it must impose a labeling or packaging requirement that is "*in addition to or different from* those required under this subchapter."

*Id.* (quoting § 136v(b)). With respect to the first condition, the fact that a pesticide manufacturer may respond to a state-law duty by *voluntarily* deciding to change its label does not itself mean that the state-law duty imposes a "labeling or packaging requirement." *Id.* at 444–45 (rejecting the lower court's "inducement test" as the standard for a "requirement" under FIFRA). Second, even a state-law rule that is properly characterized as a "labeling or packaging requirement" is not necessarily preempted. Instead, courts must engage in an analysis of the nature and content of the state-law duty to determine whether it imposes requirements that diverge from FIFRA or simply "parallel" FIFRA's requirements. *Id.* at 447. A state-law duty, for example, may merely give effect to an equivalent federal requirement, such as the prohibition on "false or misleading statements"

contained in § 136(q)(1)(A). *Id.* In that case, the state-law duty is not preempted, because it does not impose requirements that are "in addition to or different from" those required by FIFRA. *Id.* The state law "need not be phrased in the identical language as its corresponding FIFRA requirement" in order for the two duties to be parallel. *Id.* at 454 (emphasis omitted).

Defendant acknowledges that the Supreme Court's holding in *Bates* governs plaintiff's case. However, it argues that the two-step inquiry set forth in *Bates* automatically preempts all of plaintiff's claims because Raid is a public health pesticide, as opposed to the agricultural pesticide challenged in *Bates*. *See* Def.'s Br. 10–14; *see also Manual*, *supra*, at 4-8 to 4-9. According to defendant, this distinction is critical; though the EPA has waived the required submission of efficacy data for agricultural pesticides, it has not done so for products like Raid. Def.'s Br. 10–11; *see also* § 136a(c)(5)(D); Manual, *supra*, at 4-8 to 4-9. Indeed, as both parties acknowledge, the EPA approved Raid's application only after it reviewed a set of efficacy studies provided by defendant during the registration process. *See supra* p. 5–6 and note 3. Thus, defendant argues, "SC Johnson's Raid Product label contains only those efficacy claims approved by the EPA after reviewing study data submitted by SC Johnson." Def.'s Br. 12–13. Under the defendant's preferred preemption test, any state-law claim that challenges a label's efficacy representations is foreclosed by FIFRA, because these claims are "requirements for labeling or packaging" that necessarily diverge from the label approved by the EPA pursuant to FIFRA's registration scheme. *Id.* at 8–9 (citing § 136v(b)).

Defendant's argument misrepresents the holding of *Bates* and oversimplifies the scope of preemption under FIFRA. To be sure, defendant rightly points out that the Supreme Court in *Bates* acknowledged that the manufacturer of the agricultural pesticide in that case was not required to provide efficacy data to the EPA before it was granted permission to include the challenged

efficacy claim on its label. *Bates*, 544 U.S. at 440. However, there is nothing in *Bates*—or in any

of the Supreme Court's subsequent preemption cases—that conditions the scope of preemption on

the status of efficacy-data review for the particular pesticide that is being challenged.[4] Indeed, as

Judge Crotty of the Southern District of New York recently observed in rejecting an identical claim

made by this defendant, "*Bates* never stated that the state law claims at issue were not preempted

because the EPA had waived the efficacy review." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F.

Supp. 3d 454, 463 (S.D.N.Y. 2019). The *Bates* Court mentioned the status of the efficacy data

waiver in that case only to provide "additional support [for its conclusion] that it is 'unlikely that

Congress considered a relatively obscure provision like § 136v(b) to give pesticide manufacturers

virtual immunity from certain forms of tort liability.'" *Id.* at 463–64 (quoting *Bates*, 544 U.S. at

450). The Court's analysis of the express preemption clause in *Bates* focused exclusively on the

language of the preemption provision—not on the nature of the registration process. As a result,

the Court rejected a blanket approach to preemption that would foreclose *all* state-law claims that

might induce label changes, endorsing instead a more sensitive and nuanced approach that is

consistent with "the text [and] the structure of the statute." *Bates*, 544 U.S. at 446.

In essence, defendant argues that the mere fact that Raid was registered by the EPA

preempts plaintiff's claims. However, "FIFRA contains no provision preempting all state law

---

[4] Defendant argues that its position is supported by the fact that some courts have "limited the scope of express preemption under FIFRA for agricultural pesticides for which the EPA has waived review of product efficacy data." Def.'s Br. 11. The only case that the defendant cites in support for this principle, however, is *American Cyanamid Co. v. Geye*, 79 S.W.3d 21 (Tex. 2002), a Texas Supreme Court case that preceded *Bates*. *See* Def.'s Br. 11–12. The *Bates* Court cited *American Cyanamid Co.* as an example of a case that limited the scope of preemption, *see Bates*, 544 U.S. at 436 n.6, but it did not endorse the Texas court's interpretation of the importance of the EPA's waiver of efficacy data. Moreover, though the Texas Supreme Court suggested that the state-law claims at issue in that case were not preempted "because the EPA had chosen not to regulate herbicide product labeling with respect to efficacy," Def.'s Br. 11, the court did not state that "claims are *automatically* preempted in cases where waiver did not occur," Pl.'s Opp'n 7 n.2 (emphasis added).

claims relating to the efficacy or dangers of the Product." *Gucciardi v. Bonide Prods., Inc.*, 28 F. Supp. 3d 383, 392 (E.D Pa. 2014). Though both parties agree that the EPA reviewed defendant's efficacy studies before it approved the proposed label, "there is no 'indication that the EPA's approval of [the Product's] label ha[s] the force of law' and thus, carries preemptive force." *Carias v. Monsanto Co.*, No. 15-CV-3677 (JMA) (GRB), 2016 WL 6803780, at *5 (E.D.N.Y. Sept. 30, 2016) (second alteration in original) (quoting *Hardeman v. Monsanto Co.*, 216 F. Supp. 3d 1037, 1038 (N.D. Cal. 2016)); *see also Schoenhofer v. McClaskey*, 861 F.3d 1170, 1175 n.4 (10th Cir. 2017) ("It is not clear that EPA-approved labels can preempt state laws on their own; if anything, *Bates* suggests the opposite.").

Judge Azrack of this district recently rejected a similar claim in *Carias v. Monsanto Co.* In *Carias*, a group of plaintiffs challenged the accuracy of safety-related claims that appeared on the label of Roundup, an herbicide distributed by Monsanto. 2016 WL 6803780, at *1. The court first held that the EPA's approval of the product's label during the registration process did not itself preempt the plaintiff's claims. *Id.* at *4. The court proceeded to extend this holding even further, rejecting the defendant's argument that the EPA's fact-based conclusions during the registration process regarding the safety of the product foreclosed the plaintiff's claims. *Id.* at *6–7. Judge Azrack concluded that neither the EPA's registration decision nor the "factual determinations made by the EPA" preempt state-law claims, since nothing in *Bates* suggests that the agency's conclusions carry the force of law. *Id.* at *7. Likewise, in this case, the fact that the EPA approved defendant's efficacy-related claims after reviewing data that allegedly supports those claims does not give the EPA's factual conclusions preemptive effect. *See, e.g.*, *Hernandez v. Monsanto Co.*, No. CV 16-1988-DMG, 2016 WL 6822311, at *6 (C.D. Ca. July 12, 2016) (rejecting a claim that the EPA's approval of a registration application has preemptive force and concluding that *Bates*

did not hold that "the administrative determinations made in approving a registration" preempt state-law claims).

Defendant's argument also ignores a critical aspect of the FIFRA regulatory scheme: the statute's warning that the EPA's registration of a pesticide should not be "construed as a defense for the commission of any offense under [FIFRA]," § 136a(f)(2).[5] Put differently, the fact that the EPA has approved a pesticide's labeling claims does not necessarily mean that the pesticide complies with all of FIFRA's requirements—particularly the prohibition against misbranding. *See Indian Brand Farms, Inc. v. Novartis Crop Protection Inc.*, 617 F.3d 207, 222 & n.13 (3d Cir. 2010) ("[M]ere inconsistency between the duty imposed by state law and the content of a manufacturer's labeling approved by the EPA at registration d[oes] not necessarily mean that the state law duty [is] preempted."). Because this provision of FIFRA explains that registration constitutes "prima facie"—but *not* conclusive—"evidence that the pesticide, its labeling and packaging comply with the registration provisions of the subchapter," some courts call it the "'prima facie evidence/no defense' provision," *Carias*, 2016 WL 6803780, at *3 (citing § 136a(f)(2)).

As the *Bates* Court explained, the prima facie evidence/no defense provision imposes a "continuing obligation" for pesticide manufacturers to comply with FIFRA's requirements, even

---

[5] Defendant argues that § 136a(f)(2) "has no application to Plaintiff" because "FIFRA does not provide for a private right of action." Def.'s Reply 12, ECF No. 18. Though it is true that plaintiff could not sue defendant for violating FIFRA, the Supreme Court expressly invoked § 136a(f)(2) in defining a manufacturer's "continuing obligation to adhere to FIFRA's labeling requirements." *Bates*, 544 U.S. at 438 (also citing § 136j(a)(1)(E)). This provision provided the court with additional support for its conclusion that state-law requirements that simply "parallel" FIFRA's requirements—including the prohibition against misbranding—are not foreclosed by the statute. *Id.* at 438, 447–48 (observing that it is "unlawful under the statute to sell a pesticide that is registered but nevertheless misbranded" and later concluding that a "state cause of action that seeks to enforce a federal requirement" can coexist alongside FIFRA). In other words, "although FIFRA does not provide a federal remedy to [those] who are injured as a result of a manufacturer's violation of FIFRA's labeling requirements, nothing in § 136v(b) precludes States from providing such a remedy." *Id.* at 448.

12

after the manufacturer has obtained registration approval. 544 U.S. at 438; *see also Hernandez*, 2016 WL 6822311, at *7 ("[I]ndividual tort suits further Congress's intent in enacting FIFRA . . . ."). Thus, to the extent that the defendant relies upon cases involving federal statutes that do not contain a similar warning about the ongoing, post-registration duty to comply with the statutory scheme, these cases are not persuasive to the court. *See* Def.'s Reply 9–10, ECF No. 18 (citing *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) and *Wildman v. Medtronic, Inc.*, 874 F.3d 862 (5th Cir. 2017)); *see also Carias*, 2016 WL 6803780, at *8 (rejecting analogies to cases where the defendant "has not indicated that the regulatory schemes at issue . . . included any provisions similar to FIFRA's 'prima facie evidence/no defense' provision").

As a result, I conclude that the two-step test set forth in *Bates* applies to plaintiff's case, and the scope of preemption in FIFRA is not affected by the fact that the EPA reviewed defendant's efficacy data before it approved Raid's label. *See also Wyeth v. Levine*, 555 U.S. 555, 592 (2009) (Thomas, J., concurring in the judgment) ("To say . . . that [a manufacturer] may not market a drug without federal approval . . . is not to say that federal approval gives [the manufacturer] the unfettered right, for all time, to market its drug with the specific label that was federally approved.").

### B. Conflict Preemption

Before analyzing the impact of FIFRA's preemption clause on each of plaintiff's claims, I address defendant's argument that plaintiff's claims are preempted under the doctrine of conflict preemption. "[I]t has long been settled that state laws that conflict with federal law are 'without effect.'" *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 479–80 (2013) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). One form of conflict preemption—also known as implied preemption—occurs when it would be "impossible for a private party to comply with both state

and federal requirements." *Id.* at 480 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)). The fact that a statute contains an express preemption clause "does not bar the ordinary working of conflict preemption principles." *Arizona*, 567 U.S. at 406 (emphasis omitted) (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000))). Defendant argues that all of plaintiff's claims are impliedly preempted because FIFRA forbids a manufacturer from unilaterally altering its pesticide label, instead mandating that manufacturers obtain approval from the EPA before they may make any labeling changes. *See* Def.'s Br. 14–16. Thus, defendant argues, it would be impossible for it to simultaneously comply with a state law *mandating* a label change and a federal law forbidding such a change. *Id.*; *see also In re Roundup Prods. Liability Litig.*, 364 F. Supp. 3d 1085, 1088 (N.D. Cal. 2019) ("In the event the plaintiff[] prevail[s], [defendant] believes it will be trapped between a state obligation not to sell the existing version of [the Product] and a federal obligation not to sell an altered version of [the Product] without prior agency approval.").

"Impossibility pre-emption is a demanding defense." *Wyeth*, 555 U.S. at 573. As defendant observes, the Supreme Court has "sharply defined" the doctrine of conflict preemption over the course of three relatively recent cases, all involving the Food and Drug Administration's regulations on the labeling of drugs. Def.'s Br. 15. Defendant distills the holdings of these cases to one simple principle: all state-law claims are preempted whenever a regulatory scheme forbids an entity from altering a federally approved label without obtaining permission from the agency. *See id.* at 14–16 (citing *Wyeth*, 555 U.S. at 573; *Mut. Pharm.*, 570 U.S. at 480; and *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 619–20 (2011)); *see also PLIVA, Inc.*, 564 U.S. at 623–24 (holding state-law claims impliedly preempted where "a party cannot satisfy its state duties without the Federal Government's special permission and assistance"). However, while defendant rightly observes that the core principles of preemption apply across statutes, *see, e.g.*, Def.'s Reply 1, defendant's

conflict preemption argument ignores the distinctive language in FIFRA and the holding of the Court in *Bates*.[6]

As Justice Thomas noted in *PLIVA, Inc.*, "different federal statutes and regulations may . . . lead to different pre-emption results." 565 U.S. at 626.[7] In *Bates* itself, the Supreme Court's analysis "was moored tightly to the specific preemption clause at issue" and further clarified by the statute as a whole. *Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 107 (D.D.C. 2006) ("*Bates* . . . underscores the need to pay close attention to the scope of [a statute's] preemption clause."), *aff'd*, 508 F.3d 11 (D.C. Cir. 2007). Thus, FIFRA's prohibition on the unilateral alteration of a pesticide's label must be analyzed against the backdrop of the other sections of the statute. There are at least two sections that are particularly relevant here: (1) FIFRA's provision granting states

---

[6] Plaintiff cites several persuasive cases where courts have held that *Bates* itself rejected the application of conflict preemption in the context of FIFRA. Though the Supreme Court's opinion did not analyze conflict preemption directly, a review of the briefs filed in *Bates* reveals that arguments about conflict preemption were raised by both parties. *See Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1281 (D. Haw. 2015) (citing the record in *Bates* and concluding that the *Bates* Court thus "rejected impossibility preemption *sub silentio*"). Indeed, it is logical to conclude that the *Bates* Court first considered all "arguments that, if successful, would have affirmed the lower court decision finding preemption," before it held that the plaintiff's claims in that case were not necessarily preempted. *Id.*; *see also In re Roundup*, 364 F. Supp. 3d at 1088 (citing *Ansagay*, 153 F. Supp. 3d at 1281–82, and noting that defendant's "implied preemption theory is difficult—if not impossible—to square with *Bates*"). Justice Thomas's concurrence in *Bates* further supports this theory. In his opinion, he observed that the majority opinion "rightly declines to address respondent's argument that petitioner's claims are subject to *other* types of pre-emption," because the Court's holding rested exclusively on the meaning of the language in FIFRA's express preemption clause. *Bates*, 544 U.S. at 458 (Thomas, J., concurring in the judgment in part and dissenting in part) (emphasis added); *see also id.* at 459 ("Today's decision . . . comports with this Court's increasing reluctance to expand federal statutes beyond their terms through doctrines of implied pre-emption."). Though I find these arguments compelling, I conclude that defendant's conflict preemption argument fails on the merits even if it is not foreclosed by *Bates*. *See In re Roundup*, 364 F. Supp. 3d at 1088.

[7] Defendant strongly objects to plaintiff's use of this quote in his opposition brief. *See* Def.'s Reply 4 n.5. Defendant argues that Justice Thomas did not mean to suggest that "the preemption doctrine always leads to different results under different statues," but simply that generic drug companies are treated differently than brand-name drug companies by the Food and Drug Administration—the regulatory agency at issue in that case. *Id.* Even with this context, however, Justice Thomas's observation emphasizes that courts must be attentive to the unique language and requirements that exist within different regulations and preemption clauses. The court rejects defendant's suggestion that the holdings of preemption cases analyzing clauses in unrelated statutes can be applied to FIFRA without regard to these differences.

the authority to "regulate the sale or use of any federally registered pesticide or device in the State," § 136v(a), and (2) the continuing obligation for pesticide manufacturers to adhere to FIFRA's requirements, including the requirement to avoid the use of any labeling claims that are "false or misleading in any particular," § 136(q)(1)(A).

With respect to § 136v(a), "FIFRA allows states to regulate or ban pesticides that have been federally approved." *In re Roundup*, 364 F. Supp. 3d at 1088. This provision strongly suggests that a state has the authority to impose obligations upon pesticide manufacturers that would, in practice, require them to obtain EPA approval for labeling changes before their products can be sold in the state. *See id.* ("[I]f California can stop Monsanto from selling Roundup entirely, surely it can impose state-law duties that might require Monsanto to seek EPA approval before selling an altered version of Roundup in California."). *But see Mut. Pharm.*, 570 U.S. at 488 (rejecting the argument, in the context of the Federal Food, Drug, and Cosmetic Act ("FDCA"), that "an actor seeking to satisfy both his federal- and state-law obligations is . . . required to cease acting altogether in order to avoid liability"). This statutory provision is not universal; for example, in contrast with FIFRA, "nothing in the FDCA allows a state to ban a drug," *In re Roundup*, 364 F. Supp. 3d at 1088; *see also Bates*, 544 U.S. at 446 (explaining that its holding is consistent with "the State's broad authority to regulate the sale and use of pesticides," as set forth in § 136v(a)); *Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1283 (D. Haw. 2015) ("FIFRA does not foreclose each state from restricting or outright banning registered pesticides from being used and sold within its borders."). Thus, the language in § 136v(a) sets FIFRA apart from other federal statutory schemes which do not "contemplate FIFRA's level of state participation in regulating products within a federal statute's purview." *Ansagay*, 153 F. Supp. 3d at 1284; *see also Bates*, 544 U.S. at 446.

Moreover, FIFRA expressly warns pesticide manufacturers that the mere fact that their product has been registered by the EPA does not constitute a "defense" to the violation of any provision of the Act. § 136a(f)(2). If a state law merely parallels FIFRA's prohibition on misbranding, a pesticide manufacturer deemed to be in violation of the state law would *also* be required to change its label to comply with FIFRA.[8] In that case, the state-law duty would be entirely consistent with the federal duty, and the pesticide manufacturer would be obligated to obtain EPA approval in order to comply with both obligations. *See, e.g.*, *In re Roundup*, 364 F. Supp. 3d at 1087 ("[S]tate labeling schemes that are 'equivalent to, and fully consistent with, FIFRA's misbranding provisions,' do not run afoul of preemption." (quoting *Bates*, 544 U.S. at 447)); *see also Thornton v. Fondren Green Apartments*, 788 F. Supp. 928, 932 (S.D. Tex. 1992) ("When looking at a potential conflict preemption, the controlling question is whether the state law is incompatible with the goals of the federal statute." (citation omitted)).

Accordingly, I cannot conclude that plaintiff's claims are all conflict preempted solely because defendant would need to obtain EPA approval to alter Raid's label. *See Bourbia*, 375 F. Supp. 3d at 464 ("[T]he fact that Defendant would require EPA approval to change [Raid's] label does not mean that all state law claims that would lead to a label change are preempted.").[9] I thus proceed to address each of plaintiff's claims individually to determine whether they are preempted under the Supreme Court's two-step formulation in *Bates*, and whether plaintiff otherwise states a

---

[8] This analysis assumes that the state-law duty satisfies the first step of FIFRA's two-step preemption analysis and is thus a "requirement[] for labeling or packaging," § 136v(b). However, as the *Bates* Court held, not all state laws that might "motivate[] an optional decision" to change a pesticide label "qualify as a requirement." 544 U.S. at 443. As I explain below, it is not clear that all of plaintiff's claims constitute "requirements for labeling or packaging"—let alone that they would impose obligations that are "in addition to or different from" those required by FIFRA, § 136v(b).

[9] After Judge Crotty denied S.C. Johnson's motion to dismiss in *Bourbia*, defendant filed a motion for reconsideration, specifically asking the court to reconsider its ruling on conflict preemption. *See* Def.'s Reply 13 n.17. At this time, Judge Crotty has not yet ruled on the motion.

claim that would entitle him to relief.

## II.     New York General Business Law Sections 349 and 350

New York General Business Law ("GBL") sections 349 and 350 prohibit "'deceptive acts or practices' and 'false advertising' 'in the conduct of any business, trade, or commerce or in the furnishing of any service in this state.'" *Bourbia*, 375 F. Supp. 3d at 465. Plaintiff alleges that Raid's label contains misleading and inaccurate statements that constitute "deceptive acts or practices" and "false advertising" under the terms of the GBL and that he was injured as a result of these statements. Compl. ¶¶ 24–37. To make out a claim under either provision, plaintiff must demonstrate that (1) the defendant's actions "were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Here, plaintiff has adequately stated a claim under both provisions because he alleges that the challenged statements were inaccurate and, had he known about their falsity, he either would not have purchased the Product or he would have paid only reduced fee. *See* Compl. ¶¶ 24–37.

As Judge Crotty held in *Bourbia*, plaintiff's claims under the GBL "appear to impose labeling requirements," 375 F. Supp. 3d at 465, because they "set a [labeling] standard . . . that [Raid's] label is alleged to have violated," *Bates*, 544 U.S. at 446. This conclusion does not end the preemption inquiry, however. So long as plaintiff's GBL claims merely parallel FIFRA's prohibition against statements that are "false or misleading in any particular," § 136(1)(1)(A), the state-law obligation is entirely consistent with the federal-law obligation. *See Bates*, 544 U.S. at 447. Therefore, plaintiff's GBL claims do not seem to impose obligations that are "in addition to or different from" FIFRA's requirements, § 136v(b); instead, they are not preempted to the extent that they merely give effect to FIFRA's misbranding prohibition by providing plaintiff with a cause

of action to enforce that provision.[10]

Both GBL provisions contain a safe harbor clause, which provides that it is a "complete defense" under the GBL if the action challenged by a plaintiff "is subject to and complies with the rules and regulations of, and the statutes administered by[,] [a federal agency]." *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 144 (S.D.N.Y. 1987) (quoting N.Y. Gen. Bus. Law §§ 349(d), 350-c); (explaining that the safe harbor provisions cover regulations by all federal agencies (citing *Mendelson v. Trans World Airlines*, 466 N.Y.S.2d 168 (N.Y. Sup. Ct. 1983)); *see also* Def.'s Br. 17. Defendant argues that these provisions preclude plaintiff from bringing a challenge to any aspect of the Raid label. Def.'s Br. 17. As with defendant's general preemption arguments, this argument misinterprets the preemptive force of the factual conclusions reached by the EPA during the registration process. In particular, because FIFRA imposes a continuing obligation upon pesticide manufacturers to ensure compliance with the statute's misbranding prohibition, approval of a label by the EPA does not immunize a pesticide manufacturer from all state-law obligations. *See, e.g.*, *Carias*, 2016 WL 6803780, at *8 (rejecting defendant's "safe harbor" arguments and concluding that there is no indication in FIFRA that the "EPA's approval of the [Product's] label is conclusive on the question of whether the label complies with FIFRA and, thus, falls within the GBL safe harbor provisions"); *see also Hardeman*, 216 F. Supp. 3d at 1038 ("[T]he mere fact that the EPA has approved a product label does not prevent a jury from finding that that same label violates FIFRA."). To the extent that defendant relies on cases

---

[10] In *Bates*, the Supreme Court remanded the state-law "labeling or packaging" requirements to the court of appeals to determine whether Texas law overlapped entirely with FIFRA. 544 U.S. at 453. The Court "emphasize[d] that a state-law labeling requirement must in fact be equivalent to a requirement under FIFRA in order to survive pre-emption." *Id.* In other words, if a state-law claim would entitle the plaintiff to relief in a situation where FIFRA would not prohibit defendant's conduct, the state-law labeling requirement is preempted. Without any briefing on this issue and at this stage of the litigation, it is premature for the court to make a decision on the exact scope of the New York law and whether it would overlap with FIFRA in all cases.

analyzing statutes without a "prima facie evidence/no defense" provision, those cases are not binding on the scope of preemption under FIFRA. *See Carias*, 2016 WL 6803780, at *8. Therefore, plaintiff's GBL claims are not preempted, and plaintiff's claims do not fall within the safe harbor provisions of the GBL.

### III.     Breach of Express Warranty

Plaintiff also seeks to hold defendant liable for breaching the express warranty made on Raid's label. *See* Compl. ¶¶ 44–48. Specifically, plaintiff argues that three statements on Raid's label constitute warranties: the representations that Raid "kills ants, roaches, & spiders," "penetrates into cracks & crevices to kill bugs where they live & breed," and "keeps killing for up to 2 months." *Id.* ¶ 46. Because the Product did not comport with these claims, plaintiff alleges that the warranties were breached. *See id.* ¶ 47.

In *Bates*, the Supreme Court held that the plaintiff's breach of express warranty claim did not impose a labeling or packaging requirement. 544 U.S. at 444–45. The Court held that the plaintiff's common law claim "asks only that a manufacturer make good on the contractual commitment that it *voluntarily* undertook by placing that warranty on its product." *Id.* at 444 (emphasis added). Though the warranty challenged by plaintiff appeared on the product's label, the statute did not force the manufacturer to place a warranty on its label; to the contrary, neither FIFRA nor the state-law duty required the manufacturer to make an express warranty or to "say anything particular in that warranty." *Id.* at 444–45. As a result, on the basis of the first step in the preemption inquiry, the Court concluded that the breach of express warranty claim was not preempted. *Id.* at 444. Because the preemption argument failed at the first step of the analysis, the Court did not reach the question of whether the obligation imposed by the state-law claim was "in addition to or different from" the requirements imposed by FIFRA. *Id.* at 443–45.

As described above, FIFRA sets forth specific requirements for the contents of pesticide labels. Among those requirements is the obligation for pesticide manufacturers to include certain information in the "directions for use" section of the label, including: "[t]he site(s) of application," "[t]he target pest(s) associated with each site," "[t]he method of application," and "[t]he frequency and timing of applications necessary to obtain effective results." 40 C.F.R. § 156.10(i)(2)(iii)–(iv), (vi)–(vii). Arguably, then, at least one of the statements challenged by plaintiff—the claim that Raid "kills ants, roaches, & spiders"—is not a voluntary claim, and is instead required by FIFRA.[11] Defendant thus urges the court to conclude that plaintiff's breach of express warranty claim is preempted, because plaintiff seeks to challenge language that is required by FIFRA and that was reviewed and approved by the EPA prior to registration. *See* Def.'s Br. 20–21.

Judge Crotty rejected this argument in *Bourbia*, holding that the claims challenged in that case did not impose labeling or packaging requirements even though the label's language "track[s] the requirements under FIFRA." *Bourbia*, 375 F. Supp. 3d at 464. Similarly, the plaintiff here points out that "product descriptions *are* express warranties according to New York's Uniform Commercial Code." Pl.'s Opp'n 16 (citing N.Y. U.C.C. § 2-313(1)(b)), ECF No. 17. Under New York's Uniform Commercial Code, an express warranty is created by "[a]ny description . . . which is made part of the basis of the bargain." U.C.C. § 2-313(1)(b). Here, plaintiff adequately pleads that these statements were part of the basis of the bargain because he alleges that he relied on these

---

[11] FIFRA requires pesticide manufacturers to include this information, including the pests targeted by the product, in the "directions for use" section of the label, "under the heading 'Directions for Use.'" 40 C.F.R. § 156.10(2)(i). The language challenged by plaintiff, however, appears on the front of Raid's label—not in a section of the label that explains how the product should be used. Furthermore, it is not clear that the other two claims challenged by plaintiff—that the product "penetrates into cracks & crevices to kill bugs where they live & breed," and that it "keeps killing for up to 2 months"—fit within any of the required label categories. The regulation does not define what it means by the "dosage rate," "method of application" or "site of application," § 156.10(2)(iii), (v)–(vi), and neither party's briefs elaborate on the meaning of these requirements.

representations in deciding to purchase the Product. *See, e.g.*, Compl. ¶ 12. To the extent that any of the challenged claims are purely voluntary or are unrelated to defendant's required disclosures in the "directions for use" section of FIFRA's labeling requirements, I agree with Judge Crotty that these claims do not constitute labeling or packaging requirements, and thus, they are not preempted.

However, even if plaintiff's express warranty claims challenge language which is itself mandated by FIFRA's labeling requirements, those claims are not necessarily preempted. Defendant is correct that a "mandated disclosure" is materially distinct from a "voluntarily undertaken promise." Def.'s Br. 20 (quoting *Welchert v. Am. Cyanamid, Inc.*, 59 F.3d 69, 72 (8th Cir. 1995). A claim that challenges a pesticide manufacturer's compliance with *required* labeling statements may thus be characterized as a requirement for labeling or packaging under FIFRA's preemption clause. *See also Welchert*, 59 F.3d at 73; *cf. Bates*, 544 U.S. at 445 (concluding that the warranty in that case was not a requirement for labeling because the manufacturer was *not* required to include the challenged language on its label). Under the unique statutory and regulatory scheme of FIFRA, however, even a state-law labeling and packaging requirement is not necessarily preempted by the statute. As explained above, plaintiff alleges that these warranties are all misleading and inaccurate. Thus, plaintiff's claim for breach of express warranty is not preempted to the extent that it seeks only to give effect to FIFRA's prohibition on misbranding, § 136(q)(1)(A).[12]

---

[12] Defendant argues that the court should follow the holding reached in *O'Connor v. Henkel Corp.*, No. 14-CV-5547 (ARR)(MDG), 2015 WL 5922183 (E.D.N.Y. Sept. 22, 2015), and conclude that plaintiff's breach of express warranty claim is preempted. In that case, however, the plaintiff clearly sought to impose "different or additional requirements," which would have mandated the inclusion of new content on the product's labels. *Id.* at *5 (concluding that plaintiff's labeling claims would have required defendant to add "supplemental" labeling information that was not required by the Federal Food, Drug, and Cosmetic Act—the statute in that case). Here, in contrast, FIFRA broadly prohibits any labeling that is "false or misleading in any particular." § 136(q)(1)(A). In other words, there is a distinction between a state law that would

## IV.    Magnuson-Moss Warranty Act

Finally, plaintiff asserts a claim under the Magnuson-Moss Warranty Act ("MMWA"). *See* Compl. ¶¶ 55–63. "The MMWA grants relief to [] consumer[s] 'who [are] damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'" *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) (alterations in original) (quoting *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996)). Under the statute, a "written warranty" is defined as "any written affirmation of fact or written promise . . . which . . . affirms or promises that such material . . . will meet a specified level of performance over a specified period of time." 15 U.S.C. § 22301(6)(A). I agree with plaintiff that the challenged label statements fit this definition because they make specific promises about the Product's performance, its manner of operation, and the length of time that it will remain effective. *See* Pl.'s Opp'n 19; *see also Bourbia*, 375 F. Supp. 3d at 465.

The MMWA is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d). At the same time, "[i]f only a portion of a written warranty is so governed by Federal law, the remaining portion shall be subject to [the MMWA]." *Id.* Defendant argues that plaintiff's claims are barred by this statutory provision because FIFRA requires certain information to be included on pesticide labels. *See* Def.'s Reply 20. As discussed above, it is arguable that some of the challenged label statements are mandated by federal law, and thus governed by FIFRA. *But see supra*, note 11. However, other aspects of the challenged statements appear to be purely voluntary, and they therefore constitute warranties

---

require the placement of additional content on a label, on the one hand, and a state law that seeks to give effect to a general prohibition on misbranding, on the other. Because defendant's product could have been approved by the EPA even if it violated the misbranding provision, *cf.* § 136a(f)(2), I cannot conclude that plaintiff's claim imposes an obligation that necessarily conflicts with FIFRA's requirements. *See also O'Connor*, 2015 WL 5922183, at *5 ("[O]nly violations of federal requirements give rise to liability under state law." (citations omitted)).

that were made without regard to FIFRA's requirements. *See id.*; *see also Bourbia*, 375 F. Supp. 3d at 465 ("The MMWA claim is not preempted as it relates to an express warranty."). Because plaintiff's MMWA claim can survive even if some of the challenged statements are mandated disclosures, *see* § 2311(d), I deny defendant's motion to dismiss this claim.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint is denied. Plaintiff's claims are not preempted by FIFRA, and the complaint adequately states a claim for relief.

SO ORDERED.

Date:  June 28, 2019                                   _____/s/_____
       Brooklyn, New York                              Allyne R. Ross